UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11868-GAO

KEYBANK, N.A.,
Plaintiff/Defendant-in-Counterclaim,

v.

SBR CORP., d/b/a Cape Yachts, and DAVID J. NOLAN, Jr.,
Defendants/Plaintiffs-in-Counterclaim.

OPINION AND ORDER
September 19, 2013

O'TOOLE, D.J.

This case arises out of a lending relationship between KeyBank and SBR dating back to 2007. The loan agreements were guaranteed by SBR's sole officer, director, and shareholder David Nolan. KeyBank has brought suit against the defendants, SBR and Nolan, for breach of the loan agreements and personal guaranty respectively. The defendants have brought a six count counterclaim against KeyBank, who now moves (dkt. no. 23) to dismiss the Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike the defendants' jury demand.

The Counterclaims allege in substance that KeyBank approached SBR in July 2007 to persuade SBR to arrange its floor plan financing through it. KeyBank represented that it had been involved in marine lending for fifty years and would continue to be for the long term. In October 2007, KeyBank and SBR entered into two demand floor plan lines of credit totaling $4 million. The credit lines were personally guaranteed by Nolan to the amount of $1.5 million.

Eleven months after entering into the agreement, KeyBank informed the defendants that it was leaving the marine lending business and made demand for payment of the line of credit. The parties then negotiated an amendment to the loan agreements to extend payment dates and

further agreed to work together to sell off the collateral in order to maximize the value recouped, to the intended benefit of both parties. The defendants claim that as an incentive to enlist their assistance in the liquidation, KeyBank promised that it would negotiate a significant reduction of Nolan's personal guaranty. The parties entered into a formal written forbearance agreement to accomplish the liquidation of the collateral at maximum value.

The defendants assert that, despite its promise to do so in the forbearance agreement, KeyBank did not use its best efforts to liquidate the collateral for maximum value and, despite its assurances that it would do so, did not negotiate a significant reduction in Nolan's guaranty.

To survive a motion to dismiss for failure to state a claim upon which relief may be granted, a plaintiff must present facts that make his claim plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A viable complaint must plead facts that support logical conclusions. Specifically, the complaint must contain "[m]ore than labels and conclusions, and a formulaic recitation of the elements of the cause of action." Id. at 555. When evaluating a motion to dismiss, this Court must take "all the factual allegations in the complaint as true." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st. Cir 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The standard, of course, applies to counterclaims as well as original complaints. Cf. Zurich Am. Ins. Co. v. Watts Regulator Co., 796 F. Supp. 2d 240, 243-44 (D. Mass. 2011).

**I.    Count I – Promissory Estoppel**

The defendants' promissory estoppel claim is based on the alleged promise that KeyBank would negotiate to reduce Nolan's personal guaranty in exchange for his aiding in the sale of the collateral. The alleged promise relates to the parties' forbearance agreement, in which the parties chose to be governed by Massachusetts law. The agreement of contracting parties as to the law

governing their relationship is generally upheld. See Morris v. Watsco, Inc., 433 N.E.2d 886, 888 (Mass. 1982).

To prove a claim for promissory estoppel under Massachusetts law "a plaintiff must allege that '(1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise.'" Carroll v. Xerox Corp., 294 F.3d 231, 242 (1st Cir. 2002) (internal quotation marks omitted). In addition, the party bringing the claim "must prove all the necessary elements of a contract other than consideration." Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 203 (1st Cir. 2004).

Nolan and SBR defend their promissory estoppel claim by citing Dixon v. Wells Fargo Bank, N.A., 798 F. Supp. 2d 336, 340-41 (D. Mass. 2011). In Dixon, the court upheld a claim for promissory estoppel based on a similar open-ended promise, where a bank told a mortgagor that he needed to default before a modification could be negotiated. Id. at 349-50. The defendants say if Dixon's reasoning were applied here, their estoppel claim should be recognized as viable.

That is an eminently debatable proposition, but on a motion to dismiss the question is the adequacy of the pleading, not the likelihood of success on the merits of the claim. As a pleading matter, the promissory estoppel claim is sufficiently pled.

## II. Counts II and III – Negligent Misrepresentation and Misrepresentation

The defendants claim that KeyBank either negligently or intentionally misrepresented that KeyBank desired a long term relationship with the defendants and that KeyBank would negotiate to lower Nolan's guaranty in return for his help in selling the collateral.

Whether negligent or intentional, a claim for misrepresentation requires a showing of reasonable reliance. See Marram v. Kobrick Offshore Fund, Ltd., 809 N.E.2d 1017, 1031 (Mass. 2004); Davis v. Dawson, Inc., 15 F. Supp. 2d 64, 137, 149 (D. Mass. 1998). The question of reliance is typically one for the jury; however, reliance in some circumstances is unreasonable as a matter of law. Marram, 809 N.E.2d at 1031. The defendants' "long term relationship" claim is such an instance. "Where the parties, represented by counsel, proceed to negotiate and agree to the terms of an integrated contract . . . a plaintiff with considerable business intelligence should not be able to claim reliance on a representation made during negotiations which directly conflicts with the terms of the integrated contract." Davis, 15 F. Supp. 2d at 137. The various agreements attached to the Complaint show that as a matter of law, any reliance by the defendants on any such representation made prior to the loan agreements and guaranty was unreasonable. The agreements were between business people, represented by counsel, the agreements are fully integrated, and the terms directly contradict the promises which the defendants now allege were made. The loan agreements contained a demand clause, and the forbearance agreement ratified Nolan's personal guaranty. A holding to the contrary would create a scenario where:

> [c]ontracts would become no more than presumptive statements of the parties' intentions, instead of legally enforceable agreements. And the give-and-take of negotiations would become meaningless if, after making concessions in order to obtain other contractual protections, a knowledgeable party is later able to reclaim what it had given away by alleging that it had, in fact, relied not on the writing but on the prior oral statements.

Turner v. Johnson & Johnson, 809 F.2d 90, 96 (1st Cir. 1986).

Moreover, and independently, any potential claim about such a pre-agreement representation was remised by the release language included in the subsequent forbearance agreement.

On the other hand, the claim about the undertaking to negotiate a reduction in Nolan's guaranty amount is the tort analog to the quasi-contract promissory estoppel theory, is sufficiently pled, and may remain.

### III.     Count IV – Breach of Forbearance Agreement

The defendants allege that KeyBank failed to use its best efforts to liquidate the collateral for as close to market value as possible in breach of its contractual obligation under the forbearance agreement. But other than generally alleging a failure to use best efforts, the defendants assert no facts that would support that conclusion. This is very much like the defect the Supreme Court found in Twombly, where the allegation of a "conspiracy" without alleging facts from which an inference that there was a conspiracy could be made was found insufficient. See Twombly, 550 U.S. 544, 556-57 (2007). The pleading here is similarly inadequate, and Count IV of the Counterclaim must be dismissed.

### IV.     Count V – Breach of Implied Covenant of Good Faith and Fair Dealing

Count V is inadequately pled for the same reason that the breach of contract claim in Count IV is inadequate, and it also must be dismissed.

### V.     Count VI – Massachusetts General Laws, Chapter 93A

The matters at issue in Counts I, II, and III may support recovery under Chapter 93A, and for the same reasons that those claims may proceed, so may the Chapter 93A claim.

*  *  *

KeyBank has also moved to strike the defendants' jury demand based on the waiver in the agreements signed by the parties. In a diversity case, the enforcement of a contractual jury waiver is a matter of federal rather than state law. Med. Air Tech. Corp. v. Marwan Inv., Inc., 303 F.3d 11, 18 (1st Cir. 2002). Although the First Circuit has noted that there is a "presumption

against denying a jury trial based on waiver, and waivers must be strictly construed," a contractual jury waiver will be enforced if (1) it was entered into knowingly and voluntarily, and (2) the plain language of the jury waiver in the contract unambiguously covers the claims asserted. Id. at 18-19.

Both criteria are met in this case. SBR and Nolan have been in business since 1986, and the Counterclaim asserts that the company was successful and had also been involved in the type of credit transactions involved in this case. The agreements attached to the Complaint show that counsel was involved in the negotiation of the agreements. The agreements also show that the defendants signed jury waivers on five separate occasions; each waiver was distinguished from the rest of the agreement by being either in bold or underlined. The waiver by the defendants was knowing and voluntary. Even if the defendants were misled as to other business terms of the agreements, "[t]here is no necessary reason why collateral, non-business terms that are untouched by the deception must also be upset." Neuro-Rehab Assocs., Inc. v. AMRESCO Commercial Fin., L.L.C., 2006 WL 1704258, at *7 (D. Mass. June 19, 2006).

The defendants knowingly and voluntarily executed the jury waiver provisions and that its plain language unambiguously covers the claims made in this action, KeyBank's Motion to Strike Defendants' Jury Demand is GRANTED.

## **VI.** **Conclusion**

For the reasons stated herein, KeyBank's Motion to Dismiss the Counterclaims (dkt. no. 23) is GRANTED as to Counts IV and V, but otherwise DENIED. The motion to strike the jury demand is GRANTED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge